**William E. LEEK, Appellant,**

v.

**STATE OF MARYLAND, Appellee.**
**No. 9799.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 8, 1965.

Decided Nov. 22, 1965.

Barry I. Robinson, Baltimore, Md. (Court-assigned counsel) [Sullivan & Pittler, Baltimore, Md., on brief], for appellant.

Julius A. Romano, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, J. SPENCER BELL, Circuit Judge, and MARTIN, District Judge.

J. SPENCER BELL, Circuit Judge:

This is an appeal from an order of the district court refusing to issue a writ of habeas corpus. At the suggestion of petitioner and his counsel, the district court adopted the state courts' findings of the historical facts, which findings were based upon full hearings in post-conviction proceedings and on the transcript of the original trial. The petitioner contends that he was denied his Fourteenth Amendment right of due process by the state of Maryland when it permitted the introduction of illegally seized evidence at his trial for rape. The crime was alleged to have occurred shortly after 7:00 a.m. The prosecutrix furnished the police with the license number and a description of the petitioner's car. Tracing the petitioner through the car license, the police reached his home by 8:30 or 9:00 o'clock the same morning and there they discovered the car standing on the street in front of a house where the petitioner lived with his mother. The car radiator was still warm. The police entered the house by an unlocked door. It was unoccupied at the time. The petitioner alleges that in making this unlawful entry and search they found his work badge and thus discovered where he was employed. The police proceeded immediately to the petitioner's place of business, where they arrested him and took him to the station house. At the police station the prosecutrix identified the petitioner. His clothes were removed and sent to the crime laboratory, where spermatozoa were discovered on his underwear. The underwear and the laboratory report were introduced at the trial.

■■ It is the petitioner's contention that this evidence, the clothes and the laboratory report, were the fruit of the illegal search which disclosed to the police his place of employment, because when arrested he was in the act of leaving town and would consequently have escaped arrest long enough to obliterate this evidence. Although we concede that the question is not an easy one, we think the allegations do not entitle the petitioner to have his conviction set aside because the relationship between the information allegedly obtained by the illegal search and the evidence introduced at the trial is too attenuated to require the trial court to reject the questioned evidence. The information as to his place of employment did not identify the petitioner as the culprit—this fact was already known to and acted upon by the police by virtue of the information furnished by the prosecutrix and the discovery of the sought for automobile on the public street in front of the house.

The knowledge of the place of petitioner's employment did not in any sense implicate him in the crime. At most, the knowledge merely expedited the time of petitioner's arrest. The arrest was lawful since the police had reasonable grounds to believe the petitioner to be the accused party and the subsequent examination of his clothing was a reasonable and logical search growing out of the arrest.

We think Somer v. United States, 138 F.2d 790 (2 Cir. 1943), upon which the petitioner principally relies can be distinguished on its facts, for there the information illegally obtained led to the knowledge that Somer was engaged in the act of transporting whiskey and it was this knowledge which led directly to an arrest while in the act of committing the offense for which he was convicted. In this case the police had all the necessary information for arrest and were merely seeking to locate the accused. The knowledge thus unlawfully acquired was not the cause of his arrest or of the subsequent examination of his clothing. To hold that the evidence in question was tainted by the illegal act of the police would be tantamount to saying that if the police conduct themselves improperly in any manner, regardless of how remotely such conduct may relate to the accused's conviction—if it is possible though not even probable that the accused might never have been brought to justice but for the unrelated improper conduct, then the trial must be set aside. Such was not the case in Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), for in that case the knowledge gained by the improper search was offered as evidence to convict, though not the illegally seized documents themselves. The only use to which the illegally obtained evidence was put in this case was to expedite a lawful arrest by a disclosure of the possible whereabouts of the accused. The examination of the petitioner's clothing at the station house and the information thereby obtained were not sufficiently related to the illegal search of the petitioner's house to be tainted by that search.

The petitioner also complains that the police photographed his automobile and examined it for fingerprints and other evidence of the crime. No incriminating evidence was discovered, and that fact was admitted in evidence without objection by the petitioner's trial counsel. The absence of any incriminating evidence supported the petitioner's alibi, and that fact together with the fact that he failed to object makes the complaint untenable. It is, of course, beyond cavil that the police had the right to photograph the exterior of the vehicle as it sat in the public street.

The judgment of the district court is Affirmed.