NOT DESIGNATED FOR PUBLICATION

No. 114,643

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KATHRYN HICKS,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee.*


MEMORANDUM OPINION


Appeal from Saline District Court; JEROME P. HELLMER, judge pro tem. Opinion filed July 22, 2016. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue Legal Services Bureau, for appellee.

Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.


LEBEN, J.: Kathryn Hicks appeals the suspension of her driver's license, claiming that the officer who arrested her didn't have reasonable grounds to believe that she had been driving under the influence of alcohol. Without reasonable grounds, the officer wouldn't have been authorized to request a breath test for alcohol—a test that Hicks failed, since she was under 21 and the test showed she had some alcohol in her system.

But the district court's factual findings supported its conclusion that the officer had reasonable grounds to believe she had been driving under the influence of alcohol: When the officer spoke to Hicks through the driver's window, he smelled alcohol and noticed

that Hicks' eyes were watery, glazed, and bloodshot. The officer wrote Hicks a warning for speeding, and when he returned to Hicks' car to deliver the warning, he smelled alcohol again and saw alcohol containers in the car when he asked the backseat passengers to lift up the blanket on their laps. Hicks then failed a preliminary breath test, failed one of two standard field sobriety tests, and admitted to drinking. These facts gave the officer reasonable grounds, thus allowing him to request a breath test, so we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Most of the facts in this case aren't in dispute because they are based on the video of the traffic stop. Around 9:30 p.m. on November 15, 2014, Trooper J.L. Riedel of the Kansas Highway Patrol clocked a car traveling south on I-135 at 87 miles per hour in a 75-mile-per-hour zone. Riedel had been traveling north, so he turned around to follow the car. He used his radar to recheck the speed—85 miles per hour—and pulled the car over for speeding.

Hicks, who was 19 at the time, was driving, and there were four passengers in the car. Hicks and her friends were returning to Salina from Topeka, where they had been watching men's college soccer. She told Riedel that she was driving because her friends, who were all 21 or older, had planned to drink.

When Riedel first approached Hicks, he noticed a slight odor of alcohol and that Hicks' eyes were bloodshot, watery, and glazed. He also thought that Hicks might be under 21 years old and noticed that the backseat passengers' legs and the floorboards were completely covered up by a blanket. Riedel took Hicks' driver's license and proof of insurance, returned to his patrol car, and prepared a written warning for speeding.

When Riedel returned to Hicks' car, he noticed the smell of alcohol again. He also smelled breath spray that he hadn't noticed before, and he saw breath spray in the car's center console. But Hicks denied using breath spray and said she didn't have any in the car.

Riedel then asked the backseat passengers to remove the blanket covering their legs and the floorboards; he said he did this both for officer-safety reasons and because he suspected alcohol violations. When the blanket was moved, Riedel saw alcohol containers on the backseat floorboards. At that point, Riedel gave the written speeding warning to Hicks and asked her to step out of the car.

Although he had smelled alcohol on his first contact with Hicks, Riedel said that he had waited until his second contact to begin the alcohol investigation because he had wanted to "formulate a plan" for the investigation, particularly with regard to the blanket covering up much of the backseat. Riedel asked Hicks if she had been drinking, and she said no; Riedel suspected she was lying because of the smell of alcohol and her bloodshot eyes.

Once Hicks was out of the car, Riedel asked her to take a deep breath and exhale, from which he verified the smell of alcohol and breath spray. Riedel then asked Hicks if there was any alcohol in her car, and she said there wasn't. Riedel viewed this answer as deceptive because he'd already seen alcohol containers in the car. According to Hicks, she told Riedel that she didn't *know* if there was any alcohol in her car, not that there definitely wasn't any; she said she had a lot of various containers and cups in her car and just didn't know if any of them contained alcohol. But the video shows Hicks saying, "I promise there's nothing in the car," referring to alcohol.

Riedel then asked the other passengers to get out of the car. He asked the front-seat passenger if Hicks had been drinking, and the passenger said he didn't think so but

3

that he hadn't been with Hicks the whole time. Riedel then removed the alcohol containers from the front and back floorboards of Hicks' car and placed them on top of the car; some of them were open and some weren't.

Riedel next asked Hicks to take a preliminary breath test, and Hicks agreed. That test showed a result of .094, indicating that Hicks had been drinking and was over the legal limit (.02 for those under age 21 and .08 for those 21 and older). K.S.A. 2015 Supp. 8-1567; K.S.A. 2015 Supp. 8-1567a. Riedel then asked Hicks to perform two standard field-sobriety tests, the one-leg-stand test and the walk-and-turn test. Hicks passed the one-leg-stand test without any clues of impairment, but Riedel noticed three clues of impairment on the walk-and-turn test.

Riedel arrested Hicks and gave her citations for driving under the influence, being a minor in possession of alcohol, and transporting an open container. The video also shows Riedel discovering Hicks' fake ID, which said she was over 21, but Hicks wasn't charged for that. On the way to the Saline County jail, Hicks said that she had had four beers.

The evidentiary breath test showed a result of .074, which is under the legal limit for those age 21 and older (.08) but over the legal limit for drivers under the age of 21 (.02). As a result, the Kansas Department of Revenue suspended Hicks' driver's license. Hicks requested an administrative hearing, and the hearing officer affirmed the decision to suspend Hicks' license. Hicks then filed a petition for review in the Saline County District Court.

The trial took place in June 2015, and Riedel and Hicks testified as outlined above. The only issue was reasonable grounds: the burden was on Hicks to show that Riedel didn't have reasonable grounds to believe she had been driving under the influence. K.S.A. 2015 Supp. 8-1020(q). The video of the traffic stop was admitted into evidence,

4

and the district court took the case under advisement until it could review the video. The district court later described the video on the record, and it was consistent with Riedel's testimony.

Based on the evidence, the district court found that Riedel had reasonable grounds to believe that Hicks had been driving under the influence and affirmed the suspension of Hicks' driver's license. Hicks has appealed to this court.

ANALYSIS

Hicks argues that the district court wrongly concluded that the officer had reasonable grounds to believe she had been driving under the influence. We review the district court's ruling in a driver's-license-suspension case to determine whether it was supported by substantial evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Evidence is substantial when a reasonable person would accept it as adequate to support a conclusion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). When reviewing the district court's factual findings, we do not reweigh evidence, resolve evidentiary conflicts, or make determinations about witness credibility. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). However, after determining whether the district court's factual findings are supported by substantial evidence, we must independently consider the ultimate legal question of whether the officer had reasonable grounds. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, Syl. ¶ 1, 233 P.3d 286 (2010).

Anyone who drives a car in Kansas agrees, by implication, to submit to a breath test to determine the presence of alcohol. K.S.A. 2015 Supp. 8-1001(a) (implied-consent statute). But before a police officer can ask a person to take a breath test, the officer must have arrested or taken the person into custody for violating a state statute and must have "reasonable grounds to believe the person was operating or attempting to operate a

5

vehicle while under the influence of alcohol or drugs . . . or was under the age of 21 years and was operating or attempting to operate a vehicle while having alcohol or other drugs in such person's system." K.S.A. 2015 Supp. 8-1001(b)(1)(A).

"The reasonable grounds test . . . is strongly related to the standard for determining probable cause to arrest. [Citation omitted.] Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013). Probable cause is "a higher standard than reasonable suspicion but a lower standard than necessary to establish guilt beyond a reasonable doubt." *Bixenman v. Kansas Dept. of Revenue*, 49 Kan. App. 2d 1, 6, 307 P.3d 217 (2013).

Here, the district court specifically noted several facts to support its decsion that Riedel had reasonable grounds to believe that Hicks had been driving under the influence: (1) a smell of alcohol was coming from the car; (2) there were alcohol containers in the car; (3) Hicks had been speeding; and (4) Hicks wasn't truthful about whether she'd been drinking or about whether there were alcohol containers in the car. Additionally, the record shows that Hicks' eyes were bloodshot, watery, and glazed, she admitted to drinking, she failed the walk-and-turn test, and she failed the preliminary breath test. See *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015) ("When no objection is made to the adequacy of the district court's findings, we can presume the district court found all facts necessary to support its judgment."). Generally, when a person admits to drinking, has bloodshot eyes, has committed traffic infractions, and makes a few errors on field sobriety tests, Kansas courts have concluded that the officer had reasonable grounds to request a breath test. *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 659, 256 P.3d 845 (2011), *disapproved of on other grounds by Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012). And here, Hicks admitted drinking, had bloodshot eyes, was speeding, and failed the walk-and-turn test. Under these

circumstances, Riedel had reasonable grounds to believe that Hicks had been driving under the influence. See *Johnson*, 297 Kan. at 222; *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 242 P.3d 1179 (2010).

In her brief, Hicks argues that she passed the one-leg-stand test, that she didn't know there were alcohol containers in her car, and that she wasn't legally impaired since the result of the evidentiary breath test showed that her blood-alcohol level was just under the legal limit. But this competing evidence of sobriety, while part of what the court must consider to determine the reasonable-grounds issue, doesn't substantially undermine the other evidence that Hicks was under the influence. See *State v. Edgar*, 296 Kan. 513, 525, 294 P.3d 251 (2013); *Taylor v. Kansas Dept. of Revenue*, No. 112,042, 2015 WL 4460548, at *5 (Kan. App. 2015) (unpublished opinion) (reasonable grounds existed even where driver passed the one-leg-stand and alphabet tests, didn't slur his speech or fumble when retrieving his license, and was cooperative, because he also swerved over the fog line, it was early in the morning, he was coming from an area with many bars, his eyes were bloodshot, his car smelled like alcohol, and he admitted to drinking). Furthermore, it's not relevant to the reasonable-grounds question in this case that Hicks' test result was under .08 for two reasons. First, while it's always illegal to drive with a blood-alcohol level over .08, it's still possible to be an impaired driver with a test result below that number. See K.S.A. 2015 Supp. 8-1567 (defining "driving under the influence" to include both when "[t]he alcohol concentration in the person's blood or breath . . . is .08 or more" and when the driver is "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle"). So Riedel could still reasonably believe that Hicks was an impaired driver—that she was "under the influence"—even though her ultimate test result was under .08. Second, Riedel rightly suspected that Hicks was under 21, meaning that her legal limit was .02, not .08. That meant that breath testing was authorized by statute so long as the officer had reasonable grounds to believe she was driving with *any* alcohol in her system. See K.S.A. 2015 Supp. 8-1001(b)(1)(A); *State v. Schuster*, 273 Kan. 989, 991-92, 46 P.3d 1140 (2002).

7

Hicks next argues that Riedel unlawfully extended the traffic stop to investigate the alcohol offenses. To extend a traffic stop beyond the time needed to handle the traffic infraction itself, an officer must have reasonable suspicion, or a particularized and objective basis for suspecting that the person stopped has committed or is committing a crime. *State v. Pollman*, 286 Kan. 881, 889-890, 190 P.3d 234 (2008). Like reasonable grounds and probable cause, reasonable suspicion depends on all the circumstances. 286 Kan. at 890 (quoting *State v. Toothman*, 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 [1999]). But reasonable suspicion is a lower standard than reasonable grounds or probable cause; while it must be more than an unparticularized hunch, it can come from information that is less reliable than what's required to show reasonable grounds or probable cause. 286 Kan. at 890.

Hicks makes much of the fact that Riedel didn't immediately investigate the smell of alcohol when he first approached her car; according to Hicks, the lawful traffic stop ended when Riedel delivered the written warning for speeding, and he lacked reasonable suspicion at that point to continue the investigation. Assuming for the purpose of argument that that this factual distinction is meaningful, Riedel did have reasonable suspicion to continue investigating at the point he gave Riedel her ticket. On his first approach, he smelled alcohol and noticed that Hicks' eyes were bloodshot, watery, and glazed. On his second approach, before he delivered the written warning, he asked the backseat passengers to remove the blanket covering their laps, and he saw alcohol containers on the floorboards. So at the moment he delivered the written warning for speeding, which Riedel argues ended the traffic stop, Riedel had seen alcohol containers in the car and had noticed the smell of alcohol and Hicks' bloodshot eyes. Kansas courts have found that a traffic infraction plus the smell of alcohol, bloodshot eyes, and an admission of drinking is sufficient to establish probable cause. See *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998). We have no difficulty agreeing with the district court's conclusion that the

8

circumstances in this case, similar to those in *Campbell*, constituted reasonable suspicion, a lower standard than probable cause or reasonable grounds, that Hicks had committed the crime of driving under the influence.

Hicks also argues that Riedel lacked reasonable suspicion to request a preliminary breath test. An officer can request a preliminary breath test if he or she has reasonable suspicion that the person has been driving under the influence of alcohol. K.S.A. 2015 Supp. 8-1012(b); see *Pollman*, 286 Kan. at 889-90 (describing reasonable-suspicion standard). At the time Riedel requested the preliminary breath test, he had confirmed that Hicks' breath smelled of alcohol, had seen that her eyes were bloodshot, watery, and glazed, and had seen and removed multiple alcohol containers from her car. Additionally, he suspected Hicks of deception, which can also be an indicator of driving under the influence, because she had told him there weren't any alcohol containers in the car. These facts were sufficient to establish reasonable suspicion that Hicks had been driving under the influence, permitting Riedel to request a preliminary breath test.

Because Riedel had reasonable grounds to believe that Hicks had been driving under the influence, we affirm the district court's judgment.